1

2

3

4

5

6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

7

8

9    REO BOREN,                          )         3:09-cv-00731-HDM (WGC)
                                          )
10             Plaintiff,                 )         **REPORT AND RECOMMENDATION**
                                          )         **OF U.S. MAGISTRATE JUDGE**
11       vs.                              )
                                          )
12    INSPECTOR GENERAL, *et. al.*        )
                                          )
13             Defendants.                )
     _____ )

14

15    This Report and Recommendation is made to the Honorable Howard D.  McKibben,

16    Senior United States District Judge. The action was referred to the undersigned Magistrate

      Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before
17
      the court is Defendants' Motion for Summary Judgment. (Doc. # 113.)[1] Plaintiff opposed (Docs.
18
      # 121, # 127 (Supp.)) and Defendants have replied (Doc. # 132). After a thorough review, the
19
      court recommends that Defendants' motion be granted.
20

21                                    **I. BACKGROUND**

22          At all relevant times, Plaintiff Reo Boren was an inmate in custody of the Nevada

23    Department of Corrections (NDOC). (Pl.'s Sec. Am. Compl. (Doc. # 27) at 1.) The events giving

      rise to this litigation took place while Plaintiff was housed at Ely State Prison (ESP). (*Id.*)
24
      Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are
25
      Deonna Barry, Joseph Brackbill, J.  Craig Bybee, Richard Carrasco, Charles Coleman, Jason
26
      Costner, Hal Hollingsworth, Charles Kirchen, Gregory Martin, Richard Perez, Robert Ramsey,
27

28
          [1] Refers to court's docket number.

Walter Romero, Stephen Saunders, Daniel Schmidt, and Wade Smit. (*See* Screening Order (Doc. # 30).)[2]

In Count II, first, Plaintiff alleges that he was deprived of 250 meals since he started keeping records in May of 2009, and at one point was denied food for five days in a row. (Doc. # 27 at 13.) Next, Plaintiff alleges that he was refused his medications at least 100 times, and on two occasions his medication was cut off completely, sending him into withdrawals, and causing him to suffer hallucinations and a loss of sleep. (*Id.* at 14.) Finally, Plaintiff alleges that on May 11, 2009, defendants Brackbill and Martin beat him, pulled his hair out and smashed his face against a brick wall, severely injuring him. (*Id.*) He also asserts that certain John Doe defendants "electrocuted," punched, and kicked him inside his cell before this occurred. (*Id.*)

On screening the court determined that Plaintiff states the following colorable claims in Count II: (1) an Eighth Amendment conditions of confinement claim based on the alleged deprivation of meals against defendants Barry, Bybee, Carrasco, Coleman, Costner, Hollingsworth, Jacoby, Kirchen, Perez, Perkins, Ramsey, Romero, Saunders, Schmidt, and Smit; (2) an Eighth Amendment medical care claim against defendants Barry, Bybee, Carrasco, Costner, Hollingsworth, Perez, and Saunders; and (3) an Eighth Amendment excessive force claim against defendants Brackbill, Martin, and John Does. (Doc. # 30 at 8-9.)

In Count III, Plaintiff alleges: (1) on November 6, 2008, defendant Ringney slammed the metal food slot door on Plaintiff's wrist and fingers, dug his thumb into Plaintiff's right elbow, and slammed Plaintiff head-first into the concrete; (2) on July 23, 2009, defendants Hollingsworth and John Doe escorted Plaintiff to his room while he was restrained, and in so doing, slammed Plaintiff very hard on his head, causing him to temporarily black out, and when

---

[2]Defendants Ringney, Hall, and Lyons were dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m). (Doc. # 63.) Defendants Perkins and Jacoby appear as terminated on the docket sheet; however, they were named as defendants in the court's screening of the Second Amended Complaint, but it appears that they were never served. Accordingly, the court recommends that Plaintiff be given notice of intent to dismiss defendants Perkins and Jacoby pursuant to Federal Rule of Civil Procedure 4(m). Plaintiff should also be given notice of intent to dismiss the Doe defendants who have not been identified or served. Finally, the court notes that Defendants have included a defendant Bruffy in their motion while this individual was not identified as a defendant in the court's Screening Order. (Doc. # 30.)

2

1    he awoke, defendant Hollingsworth was kneeing him in the face and trying to break his wrist;

2    (3) on November 8, 2009, defendant Hollingsworth, accompanied by defendant Bybee, threw

3    a homemade bomb, full of toxic toilet cleaning chemicals into Plaintiff's eyes, causing

4    excruciating burning; (4) on November 8, 2009, defendant Schmidt refused to answer the

5    intercom when Plaintiff tried to call for help; and (5) on November 8, 2009, defendant Costner

6    slammed Plaintiff's fingers in the metal food slot, causing him severe pain and injury. (Doc. #

7    27 at 15-16.)[3]

8        On screening the court determined that Plaintiff states colorable claims for excessive

9    force under the Eighth Amendment. (Doc. # 30 at 9.) In addition, the court found that Plaintiff

10    states a colorable Eighth Amendment medical care claim against defendant Schmidt.  (*Id.*)

11        Defendants now move for summary judgment, arguing: (1) Defendants did not violate

12    Plaintiff's rights related to the alleged deprivation of meals; (2) Defendants were not

13    deliberately indifferent to Plaintiff's serious medical needs; (3) Defendants did not use

14    excessive force; (4) Defendants are entitled to qualified immunity; and (5) Defendants are not

15    amenable to suit for damages for acts performed in their official capacity. (Doc. # 113.)

16        **II.  LEGAL STANDARD**

17        "The purpose of summary judgment is to avoid unnecessary trials when there is no

18    dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*,

19    18 F.3d 1468, 1471 (9th Cir.  1994) (citation omitted). All reasonable inferences are drawn in

20    favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir.  2008) (citing

21    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate

22    if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that

23    there is no genuine issue as to any material fact and that the movant is entitled to judgment as

24    a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the

25    material facts at issue, however, summary judgment is not appropriate. *See Anderson*, 477 U.S.

26

27

28

---

[3]Count I was dismissed on screening. (*See* Doc. # 30 at 5.)  The allegations of the May 11, 2009 incident are contained in both Counts II and III, but the court's will address it once to avoid duplication.

1  at 250.

2      The moving party bears the burden of informing the court of the basis for its motion,

3  together with evidence demonstrating the absence of any genuine issue of material fact.

4  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence

5  in an inadmissible form, only evidence which might be admissible at trial may be considered

6  by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

7      In evaluating the appropriateness of summary judgment, three steps are necessary:

8  (1) determining whether a fact is material; (2) determining whether there is a genuine issue for

9  the trier of fact, as determined by the documents submitted to the court; and (3) considering

10 that evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250.

11 As to materiality, only disputes over facts that might affect the outcome of the suit under the

12 governing law will properly preclude the entry of summary judgment; factual disputes which

13 are irrelevant or unnecessary will not be considered. *Id.* at 248.

14     In determining summary judgment, a court applies a burden shifting analysis. "When

15 the party moving for summary judgment would bear the burden of proof at trial, 'it must come

16 forward with evidence which would entitle it to a directed verdict if the evidence went

17 uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of

18 establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R.*

19 *Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal

20 citations omitted). In contrast, when the nonmoving party bears the burden of proving the

21 claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence

22 to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the

23 nonmoving party failed to make a showing sufficient to establish an element essential to that

24 party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at

25 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied

26 and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress &*

27 *Co.*, 398 U.S. 144, 160 (1970).

28

4

1    If the moving party satisfies its initial burden, the burden shifts to the opposing party

2    to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v.*

3    *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute,

4    the opposing party need not establish a material issue of fact conclusively in its favor.  It is

5    sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

6    parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

7    *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The

8    nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations

9    that are unsupported by factual data. *Id.* Instead, the opposition must go beyond the assertions

10   and allegations of the pleadings and set forth specific facts by producing competent evidence

11   that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

12   At summary judgment, a court's function is not to weigh the evidence and determine the

13   truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

14   While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be

15   drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not

16   significantly probative, summary judgment may be granted. *Id.* at 249-50, 255 (citations

17   omitted).

18                                          **III. DISCUSSION**

19   **A.  PLAINTIFF'S OPPOSITION**

20   Preliminarily, the court notes that Plaintiff's opposition, filed on January 3, 2012,

21   contains Plaintiff's argument that it is well known that prison guards fabricate stories and lie

22   to cover-up their illegal activities, and that Plaintiff can prove the alleged constitutional

23   violations with eye witness testimony.  (Doc. # 121.)  Plaintiff provided no evidence in support

24   of his theories.  On February 22, 2010, Plaintiff filed a supplement to his opposition (Doc. #

25   127), which references various affidavits he says have already been supplied to the court. (*Id.*)

26   Plaintiff, however, has not identified in which of the current 132 docket entries these affidavits

27   are supposedly located. It is Plaintiff's burden to produce evidence in support of his opposition,

28

5

and not merely reference unidentified evidence that supposedly exists somewhere in the record. Moreover, Local Rule 56-1 provides that a response to a motion for summary judgment "shall include a concise statement setting forth each fact material to the disposition of the motion...*citing the particular portions of any pleading, affidavit, deposition, interrogatory, answer, admission, or other evidence upon which the party relies.*" L.R. 56-1 (emphasis added).

Plaintiff's supplemental brief does contain Exhibits A-G. (Doc. # 127.) Exhibit A is a copy of Medical Directive 434, governing consent and refusal of treatment. (*Id.* at 6-7.) Exhibit B appears to contain a letter from another inmate, Tod Mainzer, to Plaintiff's mother. (*Id.* at 9.) Exhibit C is an affidavit from inmate Antwan Richardson, which references searches of Plaintiff's cell and placement of Plaintiff in the shower. (*Id.* at 11-13.) Exhibit D is a copy of Plaintiff's emergency grievance form dated January 16, 2010, wherein Plaintiff states that defendant Ramsey and Schmidt were not making sure that men were fed. (*Id.* at 15.) Exhibit E is an inmate request form from Plaintiff to defendant Brackbill dated April 5, 2009. (*Id.* at 17.) In the request, Plaintiff asks why he was placed in the infirmary and why his medication was stopped. (*Id.*) Exhibit F is a medical kite from Plaintiff dated March 29, 2011, in which Plaintiff asserts that his medication had been cut off. (*Id.* at 19.) The response states that Plaintiff's medications were discontinued because of his non-compliance in using them correctly. (*Id.*) Exhibit G appears to be a list created by Plaintiff of the symptoms he has experienced as a result of assault and loss of his medications. (*Id.* at 21.)

**B. COUNT II**

**1. Eighth Amendment Conditions of Confinement- Meals**

**a. Standard**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. "It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer v. Brennan*, 511

1  U.S. 825, 832 (1994).

2  Although conditions of confinement may be restrictive and harsh, they may not deprive

3  inmates of "the minimal civilized measures of life's necessities." *Rhodes v. Chapman*, 452 U.S.

4  337, 347 (1981). Prison officials must provide prisoners with "food, clothing, shelter, sanitation,

5  medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir.

6  1986), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *see also*

7  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *Hoptowit v. Ray*, 682 F.2d 1237, 1246

8  (9th Cir. 1982). As the Supreme Court recently stated:

9
> To incarcerate, society takes from prisoners the means to provide for their own needs. Prisoners are dependent on the State for food, clothing, and necessary
10
> medical care. A prisoner's failure to provide sustenance for inmates "may actually produce physical 'torture or lingering death.'"

11  *Brown v. Plata*, 131 S.Ct. 1910, 1929 (2011) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103

12  (1976) (internal citation omitted)).

13  Where a prisoner alleges injuries stemming from unsafe conditions of confinement,

14  prison officials may be held liable only if they acted with "deliberate indifference to a

15  substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). The

16  deliberate indifference standard involves an objective and subjective component. First, the

17  alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834

18  (citation omitted). Second, the prison official must "know of and disregard an excessive risk to

19  inmate health or safety." *Id.* at 837. Thus, "a prison official may be held liable under the Eighth

20  Amendment for denying humane conditions of confinement only if he knows that inmates face

21  a substantial risk of harm and disregards that risk by failing to take reasonable measures to

22  abate it." *Farmer*, 511 U.S. at 835.

23  "Adequate food is a basic human need protected by the Eighth Amendment." *Keenan*

24  *v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998); *see also*

25  *Foster v. Runnels*, 554 F.3d 807, 812-13 (9th Cir. 2009) (finding the denial of sixteen meals

26  in twenty-three days was a sufficiently serious deprivation for Eighth Amendment purposes).

27  ///

28

7

1          **b. Analysis**

2          Defendants do not deny that Plaintiff was occasionally not served his meals, but argue

3    that the deprivation of food was due to Plaintiff's conduct in choosing not to eat, failing to

4    follow prison policies related to food service, or choosing to eat food purchased from the prison

5    canteen instead of the meals offered to him. (Doc. # 113 at 21.)

6          Defendants have provided Plaintiff's disciplinary records, indicating that on several

7    occasions, Plaintiff instigated the conduct which led to the denial of meals. For example on

8    March 14, 2009, Plaintiff opened his food slot and threw the food tray in the direction of

9    defendant Carrasco, striking him in the stomach. (Doc. # 115 at 27.) In addition, on September

10   19, 2009, it was reported that Plaintiff threw his dinner tray at defendant Bybee, striking him

11   and the nurse accompanying him for pill call. (Doc. # 115-1 at 11.) On September 25, 2009,

12   while picking up breakfast trays, Plaintiff threatened defendants Hollingsworth and Bybee and

13   pushed push his diet loaf and garbage from underneath his door, causing a delay in the unit's

14   operations. (*Id.* at 19.) On November 12, 2009, Plaintiff is reported to have pushed urine, feces

15   and trash onto the tier in an attempt to disrupt feeding, which was noted to be a daily

16   occurrence with Plaintiff. (*Id.* at 28.)

17         ESP Operational Procedure 711 states that before an inmate may be served a meal, he

18   must turn on his light, uncover his windows, and stand at the back of the cell so that he is

19   visible to the officer when his food slot is opened.  (Doc. # 115-3 at 11-13.) Defendants have

20   produced evidence that Plaintiff was occasionally denied meals when he failed to comply with

21   policies, such as failing to turn on his light, uncover windows, and stand at the back of his cell

22   when food was being served. (Doc. # 115-1 at 42, 45.)

23         Defendants have provided Plaintiff's canteen store receipts for items purchased by

24   Plaintiff from the canteen between 2007 and 2009.  (*See* Doc. # 115-5.)  The receipts show that

25   Plaintiff regularly purchased numerous food items from the canteen, including peanut butter,

26   oatmeal, cereal, cookies, crackers, candy, and ramen noodles. (*Id.*)

27         Defendants submitted the declaration of defendant Hollingsworth. (Doc. # 115-6 at 2-5.)

28

1    Insofar as it concerns Plaintiff's allegation that he was denied meals, defendant Hollingsworth

2    confirms that ESP's Operational Procedure 711 sets forth the guidelines for serving inmate

3    meals. (*Id.* ¶ 14.) These guidelines are for protection of the staff because inmates have been

4    known to grab staff, stab staff with prison-made weapons, and propel bodily fluids and trash

5    at staff as the food slots are opened. (*Id.* ¶ 15.) According to defendant Hollingsworth, there

6    were times that he was in charge of feeding Plaintiff, and Plaintiff would either refuse meals,

7    not respond to staff, keep his lights off, cover his windows, or not step to the back of his cell.

8    (*Id.* ¶ 16.) To the extent that defendant Hollingsworth did not provide Plaintiff with a meal,

9    it was because of his failure to comply with the feeding guidelines. (*Id.* ¶ 17.)

10          Defendant Bybee provided a declaration ((Doc. # 115-6 at 7-9) in which he recounts an

11   incident in September of 2009, when Plaintiff threw and struck him with his dinner tray. (*Id.*

12   ¶ 7.) On another occasion in September 2009, defendant Bybee and defendant Hollingsworth

13   were picking up breakfast trays, and Plaintiff pushed his diet loaf and other garbage out from

14   underneath his door, and threatened defendants Bybee and Hollingsworth. (*Id.* ¶ 8.) In

15   November 2009, defendant Bybee recalls that Plaintiff pushed urine, feces and trash out onto

16   the tier in an attempt to disrupt feeding. (*Id.* ¶ 9.) According to defendant Bybee, Plaintiff's

17   failure to receive any meals was a result of Plaintiff's own conduct, and not any malice or ill-will

18   on his part. (*Id.* ¶ 11.) He also recalls Plaintiff demanding that he go away when he tried to

19   deliver meals, and Plaintiff would tell him that he would not eat the food that was delivered.

20   (*Id.* ¶ 14.)  In addition, Plaintiff would occasionally refuse orders to turn his light on, uncover

21   his window, or step to the back of his cell.  (*Id.*) There were also occasions when Plaintiff would

22   simply ignore defendant Bybee at feeding times. (*Id.*)

23          Defendant Costner's declaration (Doc. # 115-6 at 11-13) states that he was aware of

24   Plaintiff's habit of propelling or throwing trays, debris and other trash of out his food slot at

25   correctional staff when given an opportunity. (*Id.* ¶ 5.) It was common for Plaintiff to keep his

26   dinner tray and not return it at the designated time, and then used it to delay staff in carrying

27   out their duties. (*Id.* ¶ 7.) On occasion, defendant Costner was responsible for serving breakfast

28

1    to inmates in Plaintiff's unit, and it was his experience that Plaintiff would refuse certain meals.

2    (*Id.* ¶ 12.)

3           The court finds that there is no evidence that Plaintiff suffered an objectively serious

4    deprivation or that Defendants disregarded an excessive risk to his health. While Plaintiff states

5    in his Second Amended Complaint that he has documented that he was deprived of 250 meals

6    since he started keeping records in May of 2009, and at one point was refused food for five days

7    in a row (Doc. # 27 at 13), he has provided no evidence to support these assertions. Instead, the

8    evidence before the court suggests that Plaintiff was denied meals on occasion, but that it was

9    a result of his failure to comply with prison procedures concerning feeding, or his own refusal

10   of meals. Moreover, Plaintiff's canteen receipts demonstrate that Plaintiff regularly purchased

11   numerous food items during the time period he alleges a constitutional violation occurred.

12   There is nothing in the record demonstrating that the denial of meals was objectively,

13   sufficiently serious. Nor is there any evidence to suggest that Defendants knew of and

14   disregarded a serious risk to Plaintiff's health. Accordingly, the court recommends that

15   summary judgment be granted as to this claim.

16      **2.  Eighth Amendment Deliberate Indifference to Serious Medical Need-**

17   **Medication**

18          **a.  Standard**

19   A prisoner can establish an Eighth Amendment violation arising from deficient medical

20   care if he can prove that prison officials were deliberately indifferent to a serious medical need.

21   *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "The requirement of deliberate indifference is less

22   stringent in cases involving a prisoner's medical needs than in other cases involving harm to

23   incarcerated individuals because '[t]he State's responsibility to provide inmates with medical

24   care ordinarily does not conflict with competing administrative concerns.'" *McGuckin v. Smith*,

25   974 F.2d 1050, 1060 (9th Cir. 1992), *rev'd on other grounds, WMX Tech., Inc. v. Miller*, 104

26   F.3d. 1133 (9th Cir. 1997). "In deciding whether there has been deliberate indifference to an

27   inmate's serious medical needs, [the court] need not defer to the judgment of prison doctors

28   or administrators." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989).

A finding of deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's responses to that need." *McGuckin v. Smith*, 974 F.2d at 1059.  "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* (citing *Estelle*, 429 U.S. at 104). Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (quoting *McGuckin* and finding that inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need).

If the medical needs are serious, Plaintiff must show that Defendants acted with deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id.* Inadvertence, by itself, is insufficient to establish a cause of action under § 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Farmer*, 511 U.S. at 858). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment" or the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hunt v. Dental Dep't.*, 865 F.2d 198, 201 (9th Cir. 1989) (internal quotation marks and citation omitted). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060.

1    In addition, a prison physician is not deliberately indifferent to an inmate's serious

2    medical need when the physician prescribes a different method of treatment than that

3    requested by the inmate. *See McGuckin*, 974 F.2d at 1059 (explaining that negligence in

4    diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth

5    Amendment rights); *see also Snow v. McDaniel*, 2012 WL 1889774, at * 6 (9th Cir. May 25,

6    2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)); *Franklin v. Oregon*, 662

7    F.2d 1337, 1344 (9th Cir. 1981) (difference of opinion between a prisoner-patient and medical

8    staff regarding treatment is not cognizable under § 1983). To establish that a difference of

9    opinion amounted to deliberate indifference, the inmate "must show that the course of

10   treatment the doctors chose was medically unacceptable under the circumstances" and that the

11   course of treatment was chosen "in conscious disregard of an excessive risk to [the prisoner's]

12   health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citations omitted); *see also*

13   *Snow*, 2012 WL 1889774 at * 6 (quoting *Jackson*, 90 F.3d at 332).

14                  **b. Analysis**

15   As with the alleged meal deprivations, Defendants argue that it was Plaintiff who made

16   the decision to refuse his medications, throw them at staff, or to fail to abide by policies

17   regarding the receipt of medication. (Doc. # 113 at 22.) In addition, they assert that there is no

18   evidence that Plaintiff was ever harmed as a result of his refusal to take his medication. (*Id.*)

19   On March 16, 2009, it was reported by defendant Coleman that Plaintiff threw his

20   medication at defendant Coleman instead of taking his medication. (Doc. # 115 at 36.)

21   On July 12, 2009, defendant Barry reported that he was escorting Nurse Steve Smith for

22   pill call when Plaintiff refused an order to show the nurse his identification card before the food

23   slot could be opened for distribution of the medication. (Doc. # 115 at 52.) After refusing this

24   order several times, Plaintiff became verbally abusive to defendant Barry, and refused his

25   medication. (*Id.*)

26   According to defendant Bybee, if Plaintiff did not receive his medications, it was not due

27   to the conduct of the officers, but rather, Plaintiff's own conduct. (Doc. # 115-6 at 8 ¶ 11.)

28

                                    12

1   Defendant Bybee recalls Plaintiff telling the nurse to "go away" on occasion at pill call, and

2   when defendant Bybee would escort nurses to deliver Plaintiff's medication, he would disobey

3   or refuse orders to turn his light on, uncover his window, or step to the back of his cell. (*Id.* at

4   9 ¶ 14.) In addition, there were times when Plaintiff would simply ignore him and the nurse at

5   pill call. (*Id.*)

6        Defendant Costner specifically recalls an incident on December 11, 2009, when Plaintiff

7   disrupted pill call service by trying to throw his tray and garbage at defendant Costner and the

8   accompanying nurse. (Doc. # 115-6 at 12-13.)

9        Defendants produced Plaintiff's medical records from May 2007 through January 2010.

10  (Doc. # 117-1.) The records reflect that Plaintiff refused his medication or refused to be seen at

11  sick call on July 28, 2007, June 26, 2008, September 18, 2008, September 21, 2008, October

12  7, 2008, October 20, 2008,[4] February 12, 2009, April 24, 2009, May 11, 2009,July 14, 2009,

13  August 21, 2009, and September 23, 2009.  (*Id.*)

14       In addition, he was not given his medication because of his own conduct on several

15  occasions.  For example, on April 22, 2008, Plaintiff was not given his medication because he

16  was urinating on the floor outside of his cell and was threatening to "propel" on staff.  (Doc.

17  # 117-1 at 7.) On March 14, 2009, it was noted that Plaintiff continued to refuse to comply with

18  prison procedures by failing to uncover his window before the food slot could be opened to pass

19  him his medication. (*Id.* at 11.) That same day, Plaintiff launched food trays at custody officers

20  and the nurse at evening pill call. (*Id.*) On June 16, 2009, Plaintiff threw his medication in

21  applesauce at the officer at pill call. (*Id.*)  On July 12 and 21, 2009, Plaintiff refused to follow

22  instructions to bring his identification to the window. (*Id.* at 13, 14.) At pill call on September

23  19, 2009, Plaintiff attempted to throw his food tray at defendant Bybee. (*Id.* at 14.)  He was

24  also noted as refusing to follow instructions for pill call on October 11, 12, 18, and 19, 2009.

25  (*Id.*)

26

27       [4]On this date, the following was noted: "Persistent refusal and noncompliance with pill pass procedures.

28  Refuses morning meds. Treats twice a day Tylenol order as an as needed.  Threatening staff and verbally abusive."

The evidence before the court indicates that on the occasions when Plaintiff was not given his medications it was because he refused to take them or he failed to comply with prison policies regarding distribution of medication. Defendants are correct that there is no evidence that Plaintiff suffered from any serious medical condition as a result of the occasional deprivation of his medication. Nor is there any evidence that Defendants were deliberately indifferent to a serious risk to Plaintiff's safety. As a result, summary judgment should be granted as to this claim.

### 3.  Eighth Amendment Excessive Force- May 11, 2009

#### a.  Standard

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. It "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted). The "unnecessary and wanton infliction of pain...constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley*, 475 U.S. at 320-21; *Watts v. McKinney*, 394 F.3d 710, 711 (9th Cir. 2005); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Hudson*, 503 U.S. at 9 (citing *Whitley*, 475 U.S. at 327).

In determining whether the use of force is excessive, courts are instructed to examine "the extent of the injury suffered by an inmate[,]" "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of the forceful

response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

An inmate need not establish serious injury; however, the lack of serious injury is relevant to the Eighth Amendment inquiry. *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010). "The extent of injury may [ ] provide some indication of the amount of force applied." *Id.*

That being said, not "every malevolent touch by a prison guard gives rise to a federal cause of action...The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327); *see also Wilkins*, 130 S.Ct. 1178 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." (citing *Hudson*, 503 U.S. at 9)). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 130 S.Ct. at 1178-79. If the nature of the injuries is more than *de minimis*, but still "relatively modest," the inmate's damages will likely be limited. *See id.* at 1180.

Courts must be deferential when reviewing the necessity of using force. *See Whitley*, 475 U.S. at 321-22; *see also Norwood v. Vance*, 591 F.3d 1062, 1067 (9th Cir. 2009), *cert. denied*, 131 S.Ct. 1465 (Feb. 22, 2011) ("Prison officials are entitled to deference whether a prisoner challenges excessive force or conditions of confinement." (citing *Whitley*, 475 U.S. at 322)).

### b. Analysis

In his Second Amended Complaint, Plaintiff alleges that on May 11, 2009, defendants Brackbill and Martin beat him, pulled his hair out and smashed his face against a brick wall, severely injuring him. (Doc. # 27 at 14, 15.)

Defendants provide the declaration of Lieutenant Ronald Bryant, who states that he responded to Plaintiff's cell on May 11, 2009, because Plaintiff had refused a medically ordered bed move to the infirmary. (Doc. # 115-6 at 16 ¶ 11.) He gave orders for Plaintiff to comply,

15

1    which were refused, and as a result, he prepared an extraction team to go to Plaintiff's cell and

2    remove him if he refused further orders to comply. (*Id.* ¶¶ 12-13.) Plaintiff refused additional

3    orders to comply, and as such, "hands on" force was used to gain compliance. (*Id.* ¶ 13.) After

4    Plaintiff was secured in restraints, he became verbally combative with escorting officers and

5    refused to walk, having to be carried to the infirmary. (*Id.*) He maintains that unreasonable

6    force was not applied to bring Plaintiff into compliance, rather, reasonable force was used to

7    ensure the proper functioning of the institution and to protect staff. (*Id.* ¶ 20.)

8          Defendants submitted a disciplinary notice of charges regarding the May 11, 2009

9    incident, which corroborates Lieutenant Bryant's version of events. (Doc. # 115 at 45.)

10         This entire incident was filmed, and the videotape produced by Defendants also

11   corroborates Lieutenant Bryant's version of events. (Doc. # 115-4 Ex. B-1.)

12         Defendants also filed two Unusual Occurrence Reports for this date. (Doc. # 117-1 at 39,

13   40.) The first Unusual Occurrence Report states that Plaintiff complained of chest pain and

14   asked to be taken to the hospital, but refused a transfer to the infirmary. (*Id.* at 39.) The

15   second Unusual Occurrence Report states that Plaintiff refused a bed move to the infirmary,

16   and refused medical care. (*Id.* at 40.)

17         The evidence before the court, including the declaration of Lieutenant Bryant, the video

18   footage, the notice of charges, and the Unusual Occurrence Reports, reveals that the officers

19   used only that amount of force which was necessary to restrain Plaintiff for transfer to the

20   infirmary. There is absolutely no evidence that force was applied in a malicious or sadistic

21   manner to cause harm. Moreover, there is no evidence that Plaintiff suffered *any* injuries as

22   a result of this incident. In fact, Plaintiff refused to be seen by medical care providers after the

23   transfer to the infirmary. The evidence establishes that Plaintiff refused a transfer to the

24   infirmary, and despite being given multiple chances to submit to restraints, he refused orders.

25   The officers then entered Plaintiff's cell and used minimal force to restrain him for transfer to

26   the infirmary. The officers began escorting Plaintiff to the infirmary, when he refused to walk,

27   and had to be carried. Plaintiff was placed in a cell in the infirmary without incident. The court

28

1    finds that summary judgment should be granted in Defendants' favor as to this claim.

2    **C.  COUNT III**

3            **1.  Eighth Amendment Excessive Force**

4                    **a. November 6, 2008 incident**

5            Plaintiff alleges that on November 6, 2008, defendant Ringney slammed the metal food

6    slot door on Plaintiff's wrist and fingers, dug his thumb into Plaintiff's right elbow, and

7    slammed Plaintiff head-first into the concrete. (Doc. # 27 at 15.)

8            Plaintiff failed to serve Ringney, and he has been dismissed from this action without

9    prejudice.  (Doc. # 63.)  Accordingly, this claim should also be dismissed without prejudice as

10   Ringney is the only person named in connection with these allegations.

11                   **b. July 23, 2009 incident**

12           Plaintiff asserts that on July 23, 2009, defendants Hollingsworth and John Doe escorted

13   Plaintiff to his room while he was restrained, and in so doing, slammed Plaintiff very hard on

14   his head, causing him to temporarily black out, and when he awoke, defendant Hollingsworth

15   was kneeing him in the face and trying to break his wrist. (Doc. # 27 at 15.)

16           Defendant Hollingsworth provides a declaration regarding his version of events. (Doc.

17   # 115-6 at 2-5.)According to defendant Hollingsworth, while he and Correctional Officer

18   Trainee Groben were escorting Plaintiff from a disciplinary hearing, Plaintiff pushed his body

19   into defendant Hollingsworth, forcing him into the control room wall. (*Id.*  at 3 ¶¶ 6-7.)

20   Defendant Hollingsworth held on to Plaintiff's biceps and pushed him away from the wall. (*Id*.

21   ¶ 7.) Plaintiff then made an attempt to turn towards him in an aggressive manner, and given

22   Plaintiff's agitated manner, he believed Plaintiff was going to attempt to spit on or head but

23   him, so he made the decision to go "hands on" and take Plaintiff to the ground. (*Id*. ¶ 8.) He

24   hooked his left arm under Plaintiff's right arm and grabbed Plaintiff's right shoulder and placed

25   him on the floor. (*Id*. ¶ 9.) Once Plaintiff was on the floor, he attempted to secure him by

26   holding Plaintiff's head with his right hand and holding Plaintiff's right forearm with his left

27   hand. (*Id*.)  Plaintiff would not comply with orders to stop kicking his leg and he was resisting

28

17

efforts to secure both of his arms. (*Id*.) Defendant Hollingsworth maintains that he used no more force than he believed was necessary to restrain Plaintiff and keep him from head butting, kicking and/or punching/grabbing him or Officer Groben. (*Id*. ¶ 13.)

The Unusual Occurrence Report for this date (Doc. # 117-1 at 41) notes that while Plaintiff was initially unresponsive to verbalizations, once he was placed in his cell he said he was "fine." (*Id*.) The objective notes indicate that Plaintiff was seen after a spontaneous use of force. (*Id*.) Plaintiff was face down with his wrists and ankles cuffed, and was carried to the showers and asked if he needed medical attention and he did not reply. (*Id*.) He was then carried to his cell and his restraints were removed revealing a small abrasion on the right lower leg. (*Id*.) The abrasion was not bleeding. (*Id*.) It was noted that there was no need for medical attention. (*Id*.)

As a result of this incident, defendant Hollingsworth caused a notice of charges to be issued. (Doc. # 115-6 at 4 ¶12.) The disciplinary notice of charges related to the July 23, 2009 incident corroborates defendant Hollingsworth's version of events. (Doc. # 115-1 at 2.)

The court finds that Defendants have met their burden by producing evidence which establishes that force was applied on June 23, 2009, in response to Plaintiff's aggressive conduct, and in a good faith effort to restore order. Plaintiff has not produced competent evidence showing a genuine issue of material fact. Instead, Plaintiff has relied solely on the conclusory allegations in his Second Amended Complaint. This is insufficient to defeat summary judgment. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. Accordingly, summary judgment should be granted as to this claim.

### c. November 8, 2009 incident (defendants Hollingsworth and Bybee)

Plaintiff alleges that on November 8, 2009, defendant Hollingsworth, accompanied by defendant Bybee, threw a homemade "bomb," full of toxic toilet cleaning chemicals into Plaintiff's eyes, causing excruciating burning**.** (Doc. # 27 at 15-16.)

According to defendants Hollingsworth and Bybee, they have never thrown any type of "bomb," trash, or other debris through the food slot at Plaintiff. (Doc. # 115-6 at 5 ¶ 19, 9 ¶ 18.)

18

1

2   There is simply no evidence in the record to support Plaintiff's allegation that defendants

3   Hollingsworth and Bybee threw a "bomb" made of toxic toilet cleaning chemicals at Plaintiff.

4   It is not referenced in any of the exhibits filed in support of Plaintiff's opposition. (Doc. # 127.)

5   Nor is there any reference to such an incident in Plaintiff's numerous grievances supplied to

6   the court by Defendants. (Doc. # 115-4.) Moreover, there is no mention of this incident or the

7   alleged injuries it caused Plaintiff in his medical records. (Doc. # 117-1.) As a result, the court

8   finds that summary judgment should be granted as to this claim.

9                    **d. November 8, 2009 incident (defendant Costner)**

10   Plaintiff alleges that on November 8, 2009, defendant Costner slammed Plaintiff's

11   fingers in the metal food slot, causing him severe pain and injury. (Doc. # 27 at 16.)

12   While Plaintiff asserts that the incident with defendant Costner took place on November

13   8, 2009, it appears from the evidence that the alleged incident involving defendant Costner

14   occurred on December 11, 2009. (*See* Doc. # 115-6 at 11-13 ¶ 6.) On that date, defendant

15   Costner was escorting Nurse Jake Murphy at pill call, and when they stopped at Plaintiff's cell

16   to give him his medication, he saw Plaintiff standing in his cell holding his dinner tray

17   containing garbage. (*Id.* at ¶¶ 6, 8) He ordered Plaintiff to put the tray down so he could be

18   given his medicine. (*Id.* ¶ 8.) When Plaintiff sat the food tray down, defendant Costner opened

19   the food slot and Nurse Murphy placed the medication on the food slot door. (*Id.* ¶ 9.) Plaintiff

20   approached the food slot, grabbed his medicine and attempted to grab the food tray and shove

21   it out the food slot. (*Id.* ¶ 10.) Defendant Costner tried to close the food slot so that Plaintiff

22   would not be able to hit them with the tray and garbage. (*Id.*) He does not recall ever seeing

23   Plaintiff's fingers or hand caught between the food slot and cell door, but Plaintiff did appear

24   to have a small laceration on one side of his fingers which defendant Costner believed was a

25   result of Plaintiff scraping his finger on the food slot latch. (*Id.* ¶¶ 11-12.)

26   The Unusual Occurrence Report for this date (Doc. # 117-1 at 38) contains the following

27   subjective description attributed to Plaintiff: "I/M attempted to hand officer his tray.  Officer

28

1    requested he hold on to the tray until officer could retrieve trash can. Officer attempted to close

2    food slot and inmate put hand in slot to prevent closure." (*Id.*) The objective findings indicate

3    that Plaintiff suffered a superficial laceration to his pointer finger on his left hand. (*Id.*) He was

4    given Tylenol, Band-Aids, TAO, and was offered ice but he refused. (*Id.*)

5         Here, defendant Costner has presented evidence, including his declaration and the

6    Unusual Occurrence Report, which suggests that the only "force" used on December 11, 2009,

7    was that which was necessary to close the food slot to preclude Plaintiff from projecting items

8    towards defendant Costner and Nurse Murphy. If Plaintiff's finger was injured during this

9    incident, the evidence suggests that it was inadvertent. Plaintiff has simply not produced any

10   evidence to demonstrate that defendant Costner acted maliciously and sadistically to cause

11   Plaintiff harm.  Therefore, summary judgment should be granted as to this claim.

12         **2. Eighth Amendment Deliberate Indifference to Serious Medical Need**

13         Plaintiff alleges that after defendants Hollingsworth and Bybee threw the "bomb" at him,

14   he pushed the intercom button and asked defendant Schmidt to call medical, but he refused

15   to answer.  (Doc. # 27 at 16.)  As indicated above, there is no evidence in the record to establish

16   that this incident even occurred. Moreover, there is no evidence to support a claim that Plaintiff

17   suffered from a serious medical condition in connection with this incident. In fact, the alleged

18   incident and injuries are not referenced in Plaintiff's medical records. Nor is there evidence

19   suggesting deliberate indifference on the part of defendant Schmidt. As a result, summary

20   judgment should be granted as to this claim.

21

22                              **IV. RECOMMENDATION**

23         **IT IS HEREBY RECOMMENDED** that the District Judge enter an order that

24   Defendants' Motion for Summary Judgment (Doc. # 113) be **GRANTED**, except that the claim

25   in Count III related to the alleged excessive force perpetrated by Ringney should be dismissed

26   without prejudice as Ringney was previously dismissed without prejudice pursuant to Federal

27   Rule of Civil Procedure 4(m).

28         **IT IS HEREBY FURTHER RECOMMENDED** that the District Judge give Plaintiff

1  notice of intent to dismiss Perkins, Jacoby, and any Doe defendants pursuant to Federal Rule

2  of Civil Procedure 4(m).

3          The parties should be aware of the following:

4          1.       That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the

5  Local Rules of Practice, specific written objections to this Report and Recommendation within

6  fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate

7  Judge's Report and Recommendation" and should be accompanied by points and authorities

8  for consideration by the District Court.

9          2.       That this Report and Recommendation is not an appealable order and that any

10 notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the

11 District Court's judgment.

12         DATED: July 9, 2012.

13

14                                                     _____
                                                       WILLIAM G.  COBB
15                                                     UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

21